UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL HAILU MAMO,

Petitioner,

v.

JULIO HERNANDEZ et al,

Respondents.

CASE NO. 2:26-cv-01696-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Michael Hailu Mamo's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents are Julio Hernandez, Seattle Field Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); Markwayne Mullin, Secretary, United States Department of Homeland Security ("DHS"); Todd Blanche, Attorney General of the United States; and DHS. Petitioner, who is presently detained at NWIPC (*id*. at 4 ¶ 8), seeks his immediate release (*id*. at 2). Having reviewed the Petition, Respondents'

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Return[1] (Dkt. No. 10), Petitioner's Traverse (Dkt. No. 14), and the relevant record, the Court GRANTS the Petition and ORDERS Petitioner's immediate release.

## I.    BACKGROUND

Petitioner is a 32-year-old citizen and national of Ethiopia. Dkt. No. 1 ¶ 18. On December 12, 2025, after being detained by immigration authorities and remaining in detention for six months, Petitioner filed a petition for writ of habeas before a different court in this District. Petition for Writ of Habeas Corpus at 2, *Mamo v. Bondi*, No. C25-2562, (W.D. Wash. Dec. 12, 2025), Dkt. No. 1. In the earlier habeas matter, the court found Petitioner's continued detention without a bond hearing unreasonable, and that due process required that he be given a bond hearing. Order on Habeas Petition at 12, *Mamo*, No. C25-2562, (Jan. 20, 2026), Dkt. No. 13. The court ordered Respondents to provide Petitioner with a bond hearing within 14 days of the order at which the Government bore the burden of proving by clear and convincing evidence that Petitioner was a danger to the community and/or a flight risk. *Id*. at 13. Petitioner brings the instant habeas petition challenging the bond hearing he was given in immigration court. *See* Dkt. No. 1. Therefore, the Court incorporates by reference the factual background outlined in the previous order on the previous petition. *See* Order on Habeas Petition at 2–4, *Mamo*, No. C25-2562, Dkt. No. 13. The Court provides additional background below to complete the record as to what occurred after the previous petition was adjudicated.

On January 29, 2026, the Tacoma Immigration Court held a bond hearing for Petitioner. Dkt. No. 2 (Immigration Judge Bond Order) at 42. At the beginning of the bond hearing, Immigration Judge ("IJ") Tammy Fitting stated, "the Government . . . has the burden of proof to show the Respondent's continued detention is warranted by clear and convincing evidence."

---

[1] As used in this order, the term "Respondents" does not include Respondent Scott or NWIPC. Respondents Scott and NWIPC have not responded to the habeas petition and have not appeared in this case.

Bond Hearing Audio[2] at 1:17–1:33. At the bond hearing, the Government's arguments lasted a total of approximately one minute and twelve seconds, and consisted of the following in support of its position that Petitioner was a flight risk:

> The Respondent is a definite flight risk. The Respondent misrepresented himself and his intention to the U.S. officers when he arrived at the airport. He then contradicted himself between the statements given to the immigration officers during the . . . credible fear investigation and at the individual hearing. And DHS filed a timely appeal due to these credibility issues and raised them during the individual hearing that is documented in the records. To include [a] passport with multiple dates of exits and entries in the Respondent's country and while the appeal is pending, DHS should be allowed to keep the Respondent detained.

*Id*. at 1:34–2:52. Petitioner's counsel argued that: (1) all the arguments the Government made were considered at Petitioner's prior individual hearing, at which a different IJ granted Petitioner's request for asylum[3]; (2) any alleged contradictions by Petitioner that the Government referenced were also heard by the previous IJ, who found Petitioner's asylum claim credible; (3) the events that gave rise to the asylum claim happened after Petitioner's travel to and from Ethiopia; (4) Petitioner's prior travel to and from Ethiopia is not material or relevant to being a flight risk; (5) Petitioner's passport will remain with DHS if he is released; (6) Petitioner has incentive to remain in the United States because he has already been granted asylum by an IJ; (7) Petitioner has never been convicted of a crime; (8) if released, Petitioner would live with his United States citizen brother and lawful permanent resident sister-in-law at the home they own in Renton, Washington. *Id*. at 4:15–8:22.

---

[2] Respondents filed an audio recording of Petitioner's bond hearing on a physical disk. *See* Dkt. No. 12 (Notice of Filing Paper or Physical Materials with the Clerk) ¶ 3. The Court refers to the audio recording as "Bond Hearing Audio."

[3] *See* Dkt. No. 11-3 (Order of Immigration Judge). The IJ's order granting the petition for asylum is currently on appeal before the Board of Immigration Appeals.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

In her oral ruling, the IJ stated,

> Okay and looks like the Respondent has traveled extensively. Alright. I am concerned about the respondent being a flight risk. I do not find that he is a danger to the community. I do have concerns about flight risk given the extensive travel and violated his immigration status coming in with a visa. I understand he is, was, granted asylum. The Government is challenging that and there's no final order yet. I do have jurisdiction by the habeas but again, given the limited time and ties and essentially world travel, I do have significant concerns about flight risk.

*Id*. at 12:28–14:05. Petitioner did not appeal the IJ's bond decision to the Board of Immigration Appeals ("BIA"). *See* Dkt. No. 1 ¶¶ 44–45; *see also* Dkt. No. 13 (Andron Decl.) ¶ 9. Petitioner remains in detention at NWIPC, where he has been detained since June 8, 2025. Dkt. No. 1 ¶ 20. Petitioner filed the instant habeas seeking his immediate release. The matter is fully briefed and ripe for the Court's review.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Jurisdiction

In general, the Court does not have jurisdiction to review discretionary bond decisions. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not

"preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, No. C26-900, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (alteration in original) (quoting *Kharis v. Sessions*, Case No. C18-4800, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases)). "Claims of constitutional injury, such as procedural due process violations[,] are . . . reviewable by a district court." *Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). Petitioner argues that his bond hearing was constitutionally deficient and violated his right to due process (Dkt. No. 1 at 3) because the IJ "relied on evidence that could not support bond denial as a matter of law and procedural defect pervaded [his] bond proceedings" (*id*. at 4 ¶ 6) (alteration in original) (quoting *Loya Medina*, 2026 WL 1260848, at *5). Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because he challenges the legality of his immigration bond proceeding and the resulting detention. *See Loya Medina*, 2026 WL 1260848, at *5.

**B.    Administrative Exhaustion**

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006) "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in

the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates one of the following *Laing* factors apply, which include: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

In the instant matter, the Court waives the administrative exhaustion requirement because Petitioner asserts that he will face irreparable injury if he appeals his bond decision to the BIA due to the length of time BIA appeals take—time in which he would remain in detention waiting for a BIA decision before being permitted to file a habeas claim. Dkt. No. 1 at 13 ¶ 45. The Court agrees with Petitioner's assertion, as the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer" than six months. *See Soriano*, 2026 WL 969764, at *4 (finding in case where petitioner brought habeas petition challenging his bond denial that, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."); *see also Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

(W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months). In addition, Petitioner provides a first-hand example of how he specifically has been irreparably harmed by this lengthy delay—the now seven months in detention while waiting on the BIA to decide on Respondents' appeal of the IJ's grant of Petitioner's asylum claim—that has caused significant suffering during this time (*see* Dkt. No. 1 ¶ 45; Dkt. No. 2 (Notice of Appeal to BIA) at 20–23; Dkt. No. 3 (Mamo Decl.) ¶ 21 (discussing, for example, weight loss due to poor food quality from which he now suffers nutrient and vitamin deficiencies and severe abdominal pain he endured while waiting four months for medical help outside of NWIPC—facts which Respondents did not challenge)). Therefore, Petitioner has met his burden of demonstrating that irreparable injury will result if he were required to go through the BIA appeals process. These same facts also support a finding that administrative remedies are not efficacious.

Therefore, the Court waives the administrative exhaustion requirement.

C.    **Petitioner's Bond Denial Violated Due Process**

The previous habeas order, operative at the time of the bond hearing, required the IJ to hold the Government to the burden of proving by clear and convincing evidence that Petitioner was either a flight risk or a danger to the community. The Supreme Court has explained that the clear and convincing standard requires "an abiding conviction that the truth of [the] factual contentions" at issue is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation modified). The clear and convincing standard "is 'a high burden and must be demonstrated in fact, not in theory.'" *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *5 (W.D. Wash. May 11, 2026) (citation modified) (quoting *Obregon v. Sessions*, No. C17-1463, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017)). In an immigration bond hearing, "the IJ's

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear . . . that the IJ did not actually apply the standard in h[er] reasoning and decision." *Id*. at *6 (omission in original) (quoting *Ramos-Portillo v. McAleenan*, No. C18-260, 2019 WL 3246499, at *1 (C.D. Cal. July 19, 2019)). "It is the application of the clear-and-convincing standard, not its recitation, that matters." *Id.* (quoting *Ramos-Portillo*, 2019 WL 3246499, at *1); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

### 1.    Standard of Review of IJ Bond Determination

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez*, 124 F.4th at 784 (9th Cir. 2024). When reviewing a determination for abuse of discretion, a court cannot reweigh evidence but can determine whether the IJ applied the correct legal standard. *Id.* at 785. When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following:" :

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

**2.    The IJ Abused Discretion in Denying Petitioner Bond**

Petitioner argues that the IJ "abused discretion in denying bond based on factors that, as a matter of law, could not independently support a flight risk finding" and that the government did not meet the clear and convincing standard because it "did not show, 'in fact, not in theory' that Mr. Mamo's prolonged detention is justified." Dkt. No. 1 ¶¶ 38–39. The Court agrees. The bond hearing record shows that the IJ abused her discretion by misapplying the legal standard.

First, one basis for the IJ's finding as to flight risk rested on the travel visa Petitioner intended to use to enter the United States. Bond Hearing Audio at 12:48–13:00. But while the IJ stated that Petitioner "violated his immigration status coming in with a visa," (*id*. at 12:28–13:18), the record from the hearing contains no evidence that he violated any immigration laws. Further, nothing in the Government's argument or the IJ's findings gives any insight into *why* Petitioner's manner of entry would indicate that he is likely to flee. Flying into the United States on a travel visa with a hope of applying for asylum after the fact does not indicate risk of flight, it indicates the opposite—that Petitioner wanted to bring himself to the attention of immigration authorities and participate in legal processes in hopes of remaining in the country. Moreover, the fact that a different IJ found Petitioner's asylum claim credible and granted the petition for asylum—facts the bond hearing IJ was provided—means that Petitioner has strong incentives to remain local and engage with immigration authorities in order to pursue his claim. In short, the IJ failed to rationally connect the evidence regarding how Petitioner entered the United States to the standard she was required to follow to find Petitioner a flight risk.

Second, the Government argued that Petitioner's past travel to and from Ethiopia indicated flight risk, *id*. at 2:18–2:25; 2:36–2:50, and the IJ cited this international travel as a

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9

further reason to support her flight risk finding, *id*. at 12:48–13:00; 13:18–13:28. But again, neither the Government nor the IJ provided any analysis connecting this travel to a risk of flight. In fact, the Government did not present evidence that Petitioner had any history of attempting to flee prosecution or authorities, or any record of not appearing in court (nor did the IJ mention such a history). Neither did the Government present any evidence that the referenced flights were anything more than run-of-the-mill recreational travel. Further, the IJ heard that the travel had happened prior to the issues that gave rise to the asylum claim, and that, if released, Petitioner would surrender his passport to DHS. *Id*. at 6:30–6:58. Given the evidentiary record—and lack thereof—the IJ failed to rationally connect the evidence of Petitioner's past international travel that she relied on to the standard she was required to follow to find Petitioner a flight risk.

Third, the IJ referenced Petitioner's "limited time and ties" as reason for her flight risk finding. *Id*. at 13:18–13:28. Yet, the audio record of the hearing reflects that the Government made *no* arguments as to either of these grounds. What *is* in the record is evidence that: (1) Petitioner's brother is a United States citizen; (2) Petitioner's sister-in-law a legal permanent resident of the United States; (3) Petitioner's brother and sister-in-law live in Renton, Washington, in a home they own; and (4) if released, Petitioner would live in that home with his U.S. citizen brother and LPR sister-in-law in Renton. *Id*. at 7:26–7:53. Without the Government even so much as attempting to present *any* (not to mention clear and convincing) evidence that Petitioner is a flight risk due to lack of time in or ties to the community, the IJ made such a finding where the Government clearly did not meet its burden. Indeed, it is difficult to discern how the IJ could find that the Government met its high burden to demonstrate in fact Petitioner's flight risk due to lack of time or ties to the community when it presented no facts or argument on those issues. Thus, it is clear that the IJ did not actually apply the standard of clear and convincing evidence in her finding as to Petitioner's time or ties in the community. Therefore,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 10

the Court finds that the IJ "abused h[er] discretion in finding the Government established petitioner was a flight risk by clear and convincing evidence" due to a lack of time and ties in the community. *See Tavurov*, 2026 WL 1283513, at *9.

Ultimately, upon review of the Government's approximately one-minute oral argument at the bond hearing, the Court notes that the government attorney: (1) did not mention the *Guerra* factors at all; (2) did not argue that Petitioner has a history of flight from prosecution or authorities; (3) did not explain how Petitioner's manner of arrival into the country indicates risk of flight; (4) did not make any arguments about a lack of ties or time in the community; and (5) did not respond to Petitioner's arguments that prior travel in and out of Ethiopia was irrelevant and that DHS would keep Petitioner's passport upon release. *See* Bond Hearing Audio at 1:34–2:52. The Government, which had the burden, presented no direct evidence that Petitioner is unlikely to appear for future hearings, and the record contains only the thinnest circumstantial evidence (that is, the relative recency of Petitioner's arrival in Washington).

By contrast, Petitioner presented extensive direct evidence of his local ties, history of participation in immigration proceedings, and strong incentive to continue cooperating. The IJ made no adverse credibility determinations as to any of Petitioner's evidence (and a prior IJ found Petitioner's claim of asylum credible). Accordingly, the Court finds that no reasonable and impartial decision-maker could have concluded that the Government met its burden of showing flight risk by clear and convincing evidence. Paying lip service to the clear and convincing standard by simply announcing it on the record is not the same as correctly *applying* that standard. Had the IJ done so, she could not have reached the decision she made.

As a final matter, the Court will address Respondents' argument that "Without a written decision from the IJ, this Court cannot find a due process violation without improperly speculating at the IJ's rationale or impermissibly concluding that the rationale the IJ would have

provided lacks a factual or legally sufficient basis[.]" Dkt. No. 10 at 6. Respondents provide no legal authority for such an assertion, especially considering that the IJ explained the basis for her ruling at a hearing that was audio-recorded and, indeed, all the evidence that was presented by the government was also captured both on the audio recording. The Court has reviewed the recording in full and is evaluating the rationale provided on the record based upon the evidence presented (and perhaps, more importantly, not presented) in this particular hearing. No speculation is required; the Court is privy to an unabridged record of proceedings and findings, and it is clear that the IJ wrongly applied the law.

In sum, the IJ did not hold the Government to its burden, and erred as a matter of law in finding Petitioner poses a flight risk and in denying him bond. And because the IJ failed to apply the correct legal standard, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. Accordingly, the Court finds that Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

### 3.    Appropriate Remedy

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. As stated, because the IJ failed to apply the correct legal standard, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 2026 WL 969764, at *6; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond at bond hearing violating due process and court's prior order, and releasing petitioner on "appropriate conditions of supervision"); *Loya Medina*, 2026 WL 1260848, at *8–9 (finding IJ abused discretion in denying bond at bond hearing and ordering immediate release); *Vasquez Lopez,* 2026 WL 984151, at *3

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

(W.D. Wash. Apr. 13, 2026) (same). Accordingly, the Court orders Petitioner's immediate release.

**D.      Petitioner's Request for Injunctive Relief**

At the very end of his petition, without providing any briefing on the issue, Petitioner requests that the Court "permanently enjoin[] his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks." Dkt. No. 1 at 14. There are standards a moving party must meet to be granted injunctive relief, none of which Petitioner addresses. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (providing factors a party must demonstrate to receive injunctive relief); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018); *see generally* Dkt. No. 1. Therefore, Petitioner's request for injunctive relief is DENIED.

## IV.    CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a)    SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b)    SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)    Petitioner's request for injunctive relief is DENIED.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 13

(3)    Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court strongly encourages the Parties to meet and confer prior to the filing of any such motion.

Dated this 7th day of July, 2026.

_____
Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14